E-Filed     O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7017-GHK (RCx) | Date | May 24, 2010 |
|---|---|---|---|
| Title | *United States v. Nyla McIntyre, et al.* | | |

| Presiding: The Honorable | GEORGE H. KING, U. S. DISTRICT JUDGE |
|---|---|

| Beatrice Herrera | N/A | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Daniel Layton | None |

**Proceedings:**   **(In Chambers) AMENDED** Order re: Motion to Set Aside Default; Motion for Default Judgment and Other Relief[1]

    This matter is before the Court on Defendant Nyla McIntyre's ("McIntyre")[2] Motion to Set Aside Default and the government's Motion for Default Judgment and Other Relief.  We have considered the papers filed in support of and in opposition to the Motion to Set Aside Default and the papers filed in support of the Motion for Default Judgment and Other Relief.  We deem the Motion to Set Aside Default appropriate for resolution without oral argument. L.R. 7-15.  The hearing set for March 8, 2010, at 9:30 a.m., is hereby **VACATED** and **TAKEN OFF CALENDAR**.  With respect to the Motion for Default Judgment and Other Relief, Defendant did appear at the hearing on that Motion on January 11, 2010, but could not defend on the merits, given her default status.  As the Parties are familiar with the facts in this case, we will repeat them only as necessary.  Accordingly, we rule as follows.

**I.   Motion to Set Aside Default**

    Under Federal Rule of Civil Procedure 55(c), we "may set aside an entry of default for good cause. . . ."  The "good cause" standard enunciated in Rule 55(c) is identical to that governing default judgment under Rule 60(b).  *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925 (9th Cir. 2004); *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).  We consider three factors in analyzing good cause: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether lifting the default would prejudice the plaintiff.  *Franchise Holding II*, 375 F.3d at 926.  "Where timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the

---

    [1] This Amended Order reflects no substantive changes to our reasoning or conclusions.

    [2] This Motion is brought by McIntyre.  Since McIntrye is merely doing business as Co-Defendant Approved Financial Services, Inc. and is McIntyre's alter ego, it is not required to enter a separate appearance and move separately to set aside the entry of default.

| CV-90 (06/04) | **CIVIL MINUTES - GENERAL** | Page 1 of 8 |
|---|---|---|

E-Filed  O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7017-GHK (RCx) | Date | May 24, 2010 |
|---|---|---|---|
| Title | *United States v. Nyla McIntyre, et al.* | | |

motion to set aside the default so that cases may be decided on their merits." *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945-46 (9th Cir. 1986) (citation omitted).

In their Motion to Set Aside Default, Defendants have proffered no explanation for their failure to answer the Complaint. (Dkt. No. 31, Feb. 3, 2010). Defendants' culpable conduct led to the default. In the Ninth Circuit, "if a defendant has received actual or constructive notice of the filing of the action and failed to answer, its conduct is culpable." *Franchise Holding II*, 375 F.3d at 926. Defendants have also failed to assert a meritorious defense that would justify setting aside the default. *Cf. Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) (vacating entry of default warranted where "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default"). Further delay in enjoining Defendants' conduct will also prejudice the government. We therefore **DENY** the Motion to Set Aside Default.

**II.    Motion for Default Judgment and Other Relief**

The government moves this Court for the entry of default judgment and a permanent injunction against Defendants. Granting or denying default judgment is within our sound discretion. On motions for default judgment, we accept as true the well-pleaded factual allegations of the complaint, except those relating to damages. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

McIntyre resides in Glendora, California, and does business in Covina, California, in the Central District of California. (Compl. ¶ 4). McIntyre is the owner and manager of Defendant Approved Financial Services, Inc., a corporation doing business in Covina, California. (*Id*. ¶ 5). Defendants prepare tax returns for others in exchange for compensation. Since 2006, Defendants have prepared and filed at least 2,876 federal income tax returns and amended returns. (*Id*. ¶ 6). In 2009, Defendants prepared and/or filed at least 757 federal income tax returns. (*Id*.). In 2008 and 2009, Defendants prepared and/or filed fraudulent federal income tax returns (Internal Revenue Service ["IRS"] Forms 1040X) for tax years 2005, 2006, 2007, and 2008, and prepared and/or filed with the IRS other documents on behalf of others in exchange for compensation. (*Id*. ¶ 7).

Defendants promote a tax fraud scheme that involves filing fraudulent federal income tax returns and other documents, including Forms 1099-OID and Forms Schedule B, with the IRS on behalf of their customers. (*Id*. ¶¶ 8, 10). Defendants fabricate federal income tax withholdings on tax returns they prepare, resulting in fraudulent refund claims by their customers in amounts as large as nearly $2.7 million per customer. (*Id*. ¶ 9; Mot., Ex. 9). IRS Forms 1099-OID are used by issuers of financial instruments generating original issue discount ("OID") to report OID income and any federal income tax withheld from that income. (Compl. ¶ 13). OID income refers to the difference between the discounted price at which a debt instrument is sold at issuance and the stated redemption price at maturity; it is taxable as interest over the life of the obligation. (*Id*.); *see also* 2009 Form 1099-OID, *available at* http://www.irs.gov/pub/irs-pdf/f1099oid.pdf. IRS Forms Schedule B are used to report interest and dividend income, and are attached to IRS Forms 1040. (*Id*. ¶ 14). The fraudulent Forms 1099-OID that

E-Filed   O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7017-GHK (RCx) | | Date | May 24, 2010 |
|---|---|---|---|---|
| Title | *United States v. Nyla McIntyre, et al.* | | | |

Defendants prepare and submit with returns they prepare falsely state that their customers are "payees" who receive OID income from their creditors. (*Id*. ¶ 16). The fraudulent Forms 1099-OID typically show false income paid by a customer's creditors to the customer. (*Id*. ¶ 17). Some of these forms even show the customer paying OID income to himself. (*Id*.).

Defendants next prepare tax returns reporting false income which equals or approximates the total amount of the false OID, and claim false withholding on the customer's IRS Form 1040 (or 1040X). (*Id*. ¶ 19). On these returns, Defendants have claimed false refunds often in excess of $200,000 and as high as $2.7 million in one case. (*Id*. ¶ 19). In some cases, Defendants do not prepare Forms 1099-OID, and instead, submit a false Form Schedule B reporting false interest income from creditors and false withholding. (*Id*. ¶ 21). IRS Forms 1096 are used to transmit Forms 1099-OID (and other forms) to the IRS. (*Id*. ¶ 15). The Forms 1096-A Defendants file also falsely report federal income tax withheld. (*Id*. ¶ 23). Defendants fail to sign under penalty of perjury the IRS Forms 1096 they submit. (*Id*. ¶ 24). The apparent purpose of Defendants' frivolous IRS Forms 1040, 1040X, 1099-OID, 1096-A, and Schedules B is to request fraudulent tax refunds, and this scheme is based in part on McIntyre's apparent belief that secret accounts exist that can be accessed to pay these bogus refund claims. (*Id*. ¶ 25).

In 2009, Defendants prepared and filed a 2006 Form 1040X amended federal income tax return on behalf of Victor and Amanda Castorena. On the return, Defendants requested a fraudulent refund of $2,685,782, falsely claiming an income tax withholding totaling $2,704,847. To support these fraudulent claims, Defendants attached thirteen false IRS Forms 1099-OID and a corresponding Schedule B. (*Id*. ¶ 27; Henline Decl., Ex. 3). In July 2009, after Defendants had already been advised that their practices were fraudulent during an interview with IRS officials on June 10, 2009, Defendants prepared a 2005 Form 1040X amended return for Chris and Celeste Chaney ("the Chaneys"). (Henline Decl. ¶¶ 14, 18; Mot., Ex. C; Compl. ¶¶ 28, 30-33). On the Form 1040 attached to the Form 1040X, Defendants requested a fraudulent refund of $1,124,542, and falsely reported $1,684,876 in taxable interest income and $1,684,205 in federal withholding. (Compl. ¶ 28). The Form 1040 was not signed by Defendants or the Chaneys, but it directed the IRS to the Form 1040X which reported the Chaneys owed $559,663 for 2005. (*Id*.). In 2008, Defendants prepared and filed a 2006 Form 1040X amended return for John and Kallya Georgiades. (*Id*. ¶ 29). Defendants claimed a fraudulent refund for $807,460, reported $0 in taxable interest income, and $807,500 in federal income tax withholding. (*Id*.). In support of these claims, Defendants prepared and attached five fraudulent IRS Forms 1099-OID, 1096, and a Form Schedule B. (*Id*.).

During the June 2009 interview, McIntyre claimed that the federal government maintains secret accounts that taxpayers can access, and that the use of Forms 1099-OID to access these funds by reporting any money that has passed through the taxpayers' accounts, *e.g.* bank loans, is lawful. (*Id*. ¶ 32). The IRS has identified at least 62 fraudulent returns prepared and/or filed by Defendants in 2008 and 2009 that request refunds based on Defendants' fraudulent Forms 1099-OID and Schedules B. (*Id*. ¶ 35). Many of the refund requests on these fraudulent returns exceed $200,000, and one return requests a refund of almost $2.7 million. (*Id*.). The total amount of refunds requested on those 62 returns is

E-Filed   O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7017-GHK (RCx) | | Date | May 24, 2010 |
|---|---|---|---|---|
| Title | *United States v. Nyla McIntyre, et al.* | | | |

approximately $23.2 million. (*Id*.; Henline Decl. ¶ 6). As of September 21, 2009, Defendants had prepared and filed at least 46 federal income tax returns (and amended returns) in 2009 alone, claiming fraudulent refunds using their Forms 1099-OID scheme. (Compl. ¶ 36; Henline Decl. ¶ 13). Defendants' scheme has resulted in the IRS's issuance of over $1.4 million in erroneous payments to their customers. (Compl. ¶ 39; Mot., Ex. 9 (listing fraudulent returns submitted by Defendants and identifying four cases in which funds were erroneously released); Henline Decl. ¶¶ 6, 60). The government has also incurred the expense of conducting an investigation into Defendants' fraudulent return preparation and responding to and processing the documents Defendants submitted. (Compl. ¶ 40).

Prior to the entry of default judgment, we must satisfy ourselves that the Local Rules and the *Eitel* factors have been satisfied. First, Local Rule 55-1 states that: "[w]hen application is made to the Court for a default judgment, the application shall be accompanied by a declaration in compliance with [Rule] 55(b)(1) and/or (2) and include the following: (a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Servicemembers Civil Relief Act (50 App. U.S.C. § 521) does not apply; and (e) That notice has been served on the defaulting party, if required by [Rule] 55(b)(2)." On January 8, 2010, the government submitted a declaration making these required representations to the Court. (Dkt. No. 18). Second, in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set forth seven factors for our consideration in determining whether or not to grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id*. at 1471-72. In light of the facts described above, we believe these factors militate in favor of granting the Motion. The possibility of prejudice to the United States is substantial. The Complaint is clearly sufficient. There is no money at stake in this action, only permanent injunctive relief. Given McIntyre's admissions to her willful violations during the June 2009 interview, her persistence in this fraudulent scheme even after the interview, and the ideological motivation for Defendants' actions, we think a dispute as to a material fact is unlikely in this case. (Compl. ¶¶ 30-33; Henline Decl. ¶¶ 14-18). To the extent factors (6) and (7) might favor Defendants, we do not think these factors counsel in favor of a different outcome. Although McIntyre appeared at the hearing on the Motion for Default Judgment, she did not file an Opposition and has not done so since. McIntyre only stated that she had retired from tax return preparation and was willing to discuss settlement with the government. (Dkt. No. 23). Settlement discussions subsequently broke down. (*Id*.).

Accordingly, we hereby **GRANT** the Motion for Default Judgment.

E-Filed   O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7017-GHK (RCx) | Date | May 24, 2010 |
|---|---|---|---|
| Title | *United States v. Nyla McIntyre, et al.* | | |

### III.     Request for Permanent Injunction

To obtain a permanent injunction prohibiting Defendants from acting as federal tax return preparers pursuant to 26 U.S.C. § 7407, the government must establish that: (1) defendants engaged in conduct subject to penalty under 26 U.S.C. § 6694 or 26 U.S.C. § 6695 or "engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws"; (2) "injunctive relief is appropriate to prevent the recurrence of such conduct"; and (3) defendants "continually or repeatedly engaged" in the proscribed conduct such that a more limited injunction prohibiting the misconduct "would not be sufficient to prevent such person's interference with the proper administration of this title[.]"  26 U.S.C. § 7407(b); *see also United States v. Kapp*, 564 F.3d 1103, 1109 (9th Cir. 2009); *United States v. Nordbrock*, 828 F.2d 1401, 1403 (9th Cir. 1987) (stating that any violation of Sections 6694 or 6695 must be willful in order to be "subject to penalty").  Section 6694 prohibits the knowing understatement of tax liability by a tax return preparer due to either: (1) the taking of an "unreasonable position" (*i.e.* those not supported by "substantial authority" under subsection 6694(a)(2)); or (2) understatement due to willful or reckless conduct.  26 U.S.C. §§ 6694(a)-(b).  The "traditional requirements for equitable relief need not be satisfied" where a statute authorizes the issuance of an injunction and sets forth the requisite elements.  *United States v. Estate Pres. Servs.*, 202 F.3d 1093, 1098 (9th Cir. 2000).  The government bears the burden of proving each element by a preponderance of the evidence.  *Kapp*, 564 F.3d at 1109 (citing *Estate Pres. Servs.*, 202 F.3d at 1102).

The government has made a sufficient showing that Defendants have violated 26 U.S.C. § 6694 by taking an "unreasonable position" unsupported by "substantial authority" and willfully filing fraudulent tax returns and fraudulent supporting documentation.  Even under more stringent definitions of an "unreasonable position," Defendants' conduct is manifestly unsupported.  In *United States v. Hunn*, No. CV06-1458, 2006 WL 2663783 (D. Ariz. Aug. 18, 2006), the court stated: "I.R.C. § 6694(a) penalizes a return preparer who understates a customer's liability based on a position for which there was *no realistic possibility of being sustained on the merits*, if the return preparer knew or reasonably should have known of the unrealistic position and the unrealistic position was frivolous."  *Id*. at *5 (emphasis added).  The government has also established that injunctive relief is clearly necessary to prevent a recurrence of this behavior.  Defendants willfully resumed preparing fraudulent OID-based tax returns, even after McIntyre was told she was submitting inaccurate documents, which could subject her to civil or criminal liability.  (Henline Decl. ¶ 18; Mot., Ex. C).  Defendants have not merely made a few excusable errors or tried a novel, but arguably reasonable, approach on a few returns filed at the same time; the above facts describe a significant pattern of willful misconduct.  Moreover, in addition to the Section 6994 violation, Defendants have "engaged in . . . fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws."  26 U.S.C. § 7407(b)(1)(D).

E-Filed   O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7017-GHK (RCx) | Date | May 24, 2010 |
|---|---|---|---|
| Title | *United States v. Nyla McIntyre, et al.* | | |

The remaining question concerns the scope of the Section 7407 injunction, *i.e.* whether we should issue a limited injunction, prohibiting only the specified misconduct, or grant the government's requested lifetime injunction prohibiting Defendants from preparing tax returns for others. The statute only provides that a Defendant who has "continually or repeatedly engaged" in the prohibited conduct may be permanently enjoined from tax preparation for others. *Id*. § 7407(b). Courts have considered a variety of factors in analyzing this question, including but not limited to: (1) a defendant's willingness or refusal to acknowledge wrongdoing; (2) compliance with the law following a warning or notification by the IRS that the conduct is unlawful; (3) the percentage of tax returns filed which are fraudulent; (4) the severity of the harm, *i.e.* the amount of money fraudulently requested and the amount actually and erroneously released; (5) the number of discrete fraudulent practices; (6) the longevity of the fraudulent scheme; and (7) the defendant's degree of scienter. *See, e.g.*, *United States v. Nordbrock*, 38 F.3d 440, 446-47 (9th Cir. 1994) (continual refusal to disclose information to IRS warranted broader injunction prohibiting tax return preparation for others); *United States v. Kyle*, No. 07-cv-2187, 2008 WL 2745191, at *2-3 (S.D. Cal. July 11, 2008) (citing high percentage of audited tax returns which understated tax liability, multiple fraudulent practices, and $18 million in estimated tax loss in issuing broad injunction against tax return preparation for others); *United States v. Sperl*, No. 3:06-0175, 2008 WL 2699402, at *4, 8-9 (M.D. Tenn. June 30, 2008) (noting the high percentage of randomly audited returns with tax understatement and the willfulness of defendants' conduct); *cf. United States v. Cruz*, 618 F. Supp. 2d 1372, 1391-92 (S.D. Fla. 2008) (defendant's good faith efforts and government's delay justified targeted "first-instance injunction against prohibited conduct"). None of these factors is dispositive, but they have guided various courts in making this determination as to the scope of the permanent injunction.

In addition to the continued and repeated conduct in evidence here, McIntyre's strong ideological motivation, adamant refusal to acknowledge the unlawfulness of her conduct, and her persistence in the face of the IRS's warning provide ample and compelling evidence that a limited injunction will not suffice to permanently bar Defendants' fraudulent conduct. (Mot., Ex. C (providing documentation of the fraudulent submission of the Chaneys' Form 1040X amended tax return on July 31, 2009); *id.*, Ex. 9 (listing claimed refund of $716,384 for the Chaneys)). In *United States v. Camp*, 629 F. Supp. 2d 1224 (W.D. Wash. 2009), the court cited such extreme willfulness as cause for a broader injunction against the fraudulent use of a deduction for mining investments: "a limited injunction prohibiting [Defendant] only from participating in the prohibited conduct is not sufficient because of his failure to admit the falsity of the returns he prepared, and continued pattern of violations." *Id*. at 1231. Moreover, given that McIntyre has stated she believes in the existence of secret government accounts containing withholdings that may be lawfully accessed using Forms 1099-OID, it is highly probable that Defendant would merely adopt a different scheme to attempt to access these same imagined funds if we enjoined only the OID-based scheme. Some courts have cited intransigent ideological motivation to justify enjoining any further tax return preparation by a particular defendant. In *United States v. Webb*, No. 06-CV-5317, 2007 WL 397041 (E.D.N.Y. Feb. 1, 2007), the court concluded that a more limited injunction would not suffice for an ideologically motivated defendant who refused to acknowledge his wrongdoing. *Id*. at *3-4. The court explained that:

E-Filed   **O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7017-GHK (RCx) | Date | May 24, 2010 |
|---|---|---|---|
| Title | *United States v. Nyla McIntyre, et al.* | | |

> [D]efendant's conduct is rooted in his ideology.  Defendant believes that he and his customers should not have to pay federal taxes, and the fraudulent foreign income exclusions serve solely as a means of achieving that end.  If this Court were to prohibit defendant from claiming this exclusion, defendant would doubtless resort to some other subterfuge in order to achieve the desired result: zero federal tax liability for himself and his customers.

*Id*. at *3.  Similarly, there is no reason to suspect that McIntyre will abandon her attempts to access the alleged secret U.S. Treasury accounts simply because she is foreclosed from using one particular method.

Finally, the government also seeks permanent injunctive relief pursuant to 26 U.S.C. § 7408. *United States v. Marty*, No. CIV S-09-0600, 2009 WL 2365556, at *2 (E.D. Cal. July 29, 2009) ("Under section 7408, the United States must demonstrate a likelihood of success on the merits '(1) that [defendant] has engaged in any specified conduct [conduct subject to penalty under §§ 6700 and/or 6701], and (2) that injunctive relief is appropriate to prevent recurrence of such conduct.'  26 U.S.C. § 7408(b), (c).  Section 6700 proscribes, *inter alia*, the promotion of abusive tax shelters, while section 6701 proscribes aiding and abetting understatement of tax liability.").  Under 26 U.S.C. § 6701, a person "(1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document, (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person," may be penalized.  McIntyre's conduct satisfies this standard.  She clearly advised a number of clients that they could file fraudulent IRS Forms 1099-OID in order to secure refunds that would help pay off mortgage and/or credit card debts.  She assisted in the preparation and procurement of returns, amended returns, and supporting documentation such as a Form Schedule B, and also advised clients as to these matters.  McIntyre knew that these forms would be used in connection with a material matter arising under the Internal Revenue Code.  Finally, she knew that the fraudulent IRS forms and other documentation would result in the understatement of tax liability, at the very least after she was informed by IRS officials that her position with respect to OID income was unreasonable.

The injunction standard under Section 7408 mirrors the Section 7407 standard, except the former does not authorize a broader injunction against all tax return preparation for others.  The Ninth Circuit has also set forth the following factors for courts to consider when weighing the likelihood of recurrence and therefore the necessity for an injunction under Section 7408, including: "(1) the gravity of the harm caused by the offense; (2) the extent of the defendant's participation; (3) the defendant's degree of scienter; (4) the isolated or recurrent nature of the infraction; (5) the defendant's recognition (or non-recognition) of his own culpability; and (6) the likelihood that defendant's occupation would place him in a position where future violations could be anticipated." *Estate Pres. Servs.*, 202 F.3d at 1105.  First, the harm to the government and the public is severe.  Second, McIntyre is the sole perpetrator here.  Third, it is unclear whether McIntyre understands this is unlawful conduct, even after her interview with IRS officials, but she is not entitled to avoid liability on this basis.  McIntyre has been

E-Filed   O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-7017-GHK (RCx) | Date | May 24, 2010 |
|---|---|---|---|
| Title | *United States v. Nyla McIntyre, et al.* | | |

told that her conduct is fraudulent, and she knowingly and willfully prepares these returns anyway. Fourth, the infractions are part of a systematic, recurring practice. Fifth, McIntyre refuses to recognize her own culpability and maintains that this conduct is lawful. Sixth and finally, McIntyre's occupation as a tax return preparer places her at significant risk of recidivism. Given her beliefs and willful defiance of the IRS officials' warning, her continued work as a professional tax preparer will permit her to perpetuate this fraudulent scheme and succeed with respect to a fraction of the submissions. Therefore the *Estate* factors counsel in favor of granting a permanent injunction under § 7408 as well.

### IV.    Conclusion

Accordingly, we hereby **GRANT** the government's Motion and permanently enjoin Defendant from preparing tax returns for others under 26 U.S.C. §§ 6694, 7407 and from aiding and abetting the understatement of tax liability by, among other things, advising other persons or entities on how to submit fraudulent IRS Forms 1099-OID under 26 U.S.C. §§ 6701, 7408. Based on the foregoing and the record in this case, we hereby **ORDER** the permanent injunction set forth separately in the judgment.

**IT IS SO ORDERED.**

|  |  |  |
|---|---|---|
| | -- : -- | |
| Initials of Deputy Clerk | Bea | |